Good morning. Melanie Gavisk on behalf of Mr. White. I would like to reserve two minutes for rebuttal. I'll try to do my best to do that. Mr. White was convicted of first-degree kidnapping based on evidence he tried to rob his neighbor after a fight over playing chess for money. The only reason the jury convicted him of kidnapping was because it was incorrectly instructed that it could convict him of both robbery and kidnapping based on evidence of only physical restraint. In Mendoza v. State, the Nevada Supreme Court specifically ruled that evidence of physical restraint alone would not support a dual conviction for kidnapping and robbery. But in Mr. White's case, the Nevada Supreme Court specifically held that an instruction that told the jury it could convict based on physical restraint alone was correct. That was unreasonable. It said it complied with what they had said in the earlier case. That's correct. Why do we overturn that? Isn't that simply a question of State law? Your Honor, you're right that we defer to State law. We defer to the State law on the State legal standard. And the legal standard is Mendoza. We defer to them on that. But the question about whether or not this instruction, the instruction given in White's case, whether or not it comported with due process, that's a question for this Court and a question that sounds hideous. Was that due process question raised to the Nevada Supreme Court on direct appeal? Absolutely it was. It was raised as a due process. It was raised as a due process and as a State procedural law issue. Was the argument made, though, that Mendoza had changed the elements and because the elements hadn't been proven that that was a due process violation? I didn't see that argument made. That argument was not raised. But the argument that was raised was that the instruction as it was given didn't comply with the State law. And you have to remember that at the time of Mendoza, when Mendoza was decided, there was a lot of law that already said that physical restraint alone was not sufficient. And in fact, trial counsel had argued that. She had said this after the fact, after the instruction was given, and after the jury had convicted, she said this instruction was wrong because it allowed for physical restraint alone. She specifically said that. I'm not understanding that. I thought there was no objection. There wasn't. There was no objection at the time that the instruction was given.  And the State supreme court said there was no plain error. That's correct. But she did object or she did raise the issue after trial, after he'd been convicted. She raised the issue and raised it specifically with respect to subsection 2, the subsection that talked about physical restraint alone. So it seems in your briefing that you've been assuming that the Nevada supreme court reached this due process question, but I'm not sure it was even raised. So why have you been applying the AEDPA standard as if the court actually reached the question you're arguing now? Why don't we treat this as an issue that wasn't even addressed by the State supreme court? Well, I think this issue was addressed by the State supreme court when it decided that Mendoza comported with State law. So then it was also raised as that they, the jury had not been required to convict him based on all elements of the crime as a violation of which. No, the Nevada supreme court, as I read it, said that this instruction comported with Mendoza. Right. It said it comported with Mendoza, so therefore the jury was required to find all the But it didn't say it wasn't a Winship violation. It did not say that. So why do we think that it addressed the Federal question at all? If I could have one moment, I just want to take a second and look at the EOR, because I do believe that the – but I want to confirm that Winship was cited in the State court briefing. I don't see it in there, do you? I think it might be. But I don't know.   Okay. Okay. Okay. Okay. Okay. I think it's at EOR 352, but for a different point. Thank you, Your Honor. Or at least somewhere between 352 and 355. Yeah. Right. I'm sorry. Yeah. At EOR 348, that's where he says the State failed to prove the elements of kidnapping, which obviously would be a Winship violation. And so, counsel, as I understand it, your argument would be that even if the State court says it complied with the State law elements, there is a Federal question if, in fact, it did comply with the elements. And to give you an example, let's say this was a kidnapping case and one of the elements was the defendant had to be wearing a Santa suit or something crazy that the district trial court gave. That could be, in your view, even if the Nevada Supreme Court said that it complied with State law, there still would be a Federal question if the State court simply threw in some bizarre element or didn't require an element of some kind. That makes it a Federal question. That makes it a Federal question under Estelle about whether that jury instruction complied with State law. The State announces what the State law is, but it's for this court to determine whether the instruction that was given violated due process under Estelle. At the point where Winship was mentioned in the opening brief, the argument being made was that the jury instruction had allowed the defendant to be convicted for his brother's conduct and had also used the word victim. There was nothing about physical restraint being argued at that point, correct? That's – I mean, they were talking about physical restraint because they were talking about the – the only testimony about physical restraint related to the – Mr. White's brother. But at the same time, when Mendoza was decided and when Mendoza itself said it clarified the law, clarified that physical restraint was not an element of the crime, then that – that portion of the claim was raised – was actually initially addressed by the State in their answering brief and then raised again in the reply brief. So if we think that this argument wasn't raised or addressed by the Nevada Supreme Court, is that actually better for you? Because then we can review this question de novo. If it wasn't – if it wasn't addressed by the Nevada Supreme Court, but it was properly presented, then, yes, you can review it de novo, because I don't think that there is any indication. It was clearly presented to the Nevada Supreme Court. So if they didn't address it, if they only addressed the State law issue about whether or not it comported with Mendoza, then it would be de novo review. Even if it wasn't presented, wouldn't it be procedurally defaulted now and the State didn't argue procedural default? If it wasn't – I'm sorry. Could you repeat your question? So if it wasn't presented, then perhaps you could go back and present it, but I'm assuming at this point it would be procedurally defaulted. I think it's fair to say it would likely be procedurally defaulted, assuming that there wouldn't be cause and prejudice to overcome some of those defaults. So if we assume it's procedurally – if we assume it wasn't raised – I know you don't like that assumption, but if we assume it wasn't raised and now it's procedurally defaulted, I haven't seen the State arguing that this issue is procedurally defaulted. So it would seem to me that's actually good for you, but that's not what you're arguing. Oh, yeah. You're right. That's good for me. If the State didn't argue it, that's very good for me. Thank you. If the State didn't argue it, so the State's waived. That's a waivable defense. They didn't raise. And then we would review this due process issue that you're arguing. You're briefed now, de novo. Yes. Counsel, you have less than two minutes remaining. Either now or in rebuttal, I would like you to address the harmlessness argument that the government's making. So if you want to save that for rebuttal, that's fine. I'll save it for rebuttal. Thank you, Your Honor. May it please the Court. Good morning. Jeffrey Conner, Deputy Attorney General, on behalf of the Respondent. Word in even. Reviewing this case reminds me of the proverb, all roads lead to Rome. For somebody like me who works with federal habeas jurisprudence on a daily basis, this case presents a lot of very interesting issues, legal issues that are currently developing very quickly in federal habeas corpus. What's the appropriate standard of review? What, if any, is the clearly established federal law that addresses the whether or not, if there was any error, and I'm not conceding that there was, if it was harmless under the Breck versus Abrahamson standard. But I think it's important for the Court to take a step back and look at the big picture and the practicalities of this case. Federal habeas is an extraordinary remedy that's to be granted in only extreme circumstances, circumstances where the state court decision conflicts with clearly established binding Supreme Court precedent. There are a lot of roads that this Court can go down to reach a resolution in this case. But I think there's only one reasonable resolution in this case, and that's to affirm the district court's denial of the federal petition. The Court initially, to answer some questions about whether or not this claim was fairly presented in the Nevada Supreme Court or not, it was addressed by the Nevada Supreme Court on the merits. The issue was actually raised in the State's answering brief. Mendoza wasn't decided until after the opening brief was filed in this case. So it couldn't have been raised in, I mean, the issue itself could have been raised in the opening brief, but they couldn't have relied on Mendoza until afterwards. So it was raised in the Nevada Supreme Court and decided on the merits by the Nevada Supreme Court. What was the State's position in its brief with respect to Mendoza? Your Honor, I don't recall exactly the State's position. But even, you know, the State's position as to what it argued isn't really all that relevant at this point, because as we know now pursuant to Harrington v. Richter and Johnson v. Williams, where a State claim is adjudicated on the merits of State court, this Court is supposed to look and see if there is any reasonable basis upon which the Nevada Supreme Court could have denied relief. I'm just not sure it really was adjudicated on the merits. I think the State did raise Mendoza, but not with respect to this due process issue that is now being argued. Well, that being the case, you know, it's the State's position that the Mendoza issue was looked at in the State court. And so it was adjudicated on the merits. If not, if it wasn't fairly presented, it is unexhausted and should be procedurally defaulted. Just because we didn't raise procedural default in our answering brief, I don't think that should be considered waived for a couple of reasons. One, this claim was not raised in the district court, so we haven't had an opportunity to address procedural default in the district court. So as the ---- So have you looked at the reply to the answer in the district court? Because I think it was raised there. I have not. But to the extent if the court addressed it below, or if this Court is satisfied that it was adequately addressed in the district court, then, you know, even if where Nevada was going with it, all roads lead to Rome, this, you know, no matter how you look at the record in this case, there's sufficient evidence to find that the elements of both offenses were satisfied under Nevada law. If you look at the record in this case, this wasn't just an attempted robbery. He tried to get money from the victim in the kitchen. And when he said, I don't have any money, this continued to go on for an extended period of time, where the defendant actually left the room and grabbed a different gun, came back and fired it at him on two separate occasions in two different rooms. There is very clearly an increased risk of harm to the victim, and there is very clearly an independent purpose to what he was doing, too. This guy was enjoying what he was doing. He was exerting dominion and control over this guy and holding him captive, and he was enjoying that. And I'm not going to go ahead and repeat the testimony from trial, but he was calling the victim explicitives and then telling him that he wanted to see him pee his pants. But, counsel, that all may be true, but many times when robbers commit crimes, they say nasty things to their victim. It doesn't make it a kidnapping. In this case, what was the physical restraint that substantially increased the risk of harm to the victim here? He fired a gun at him. But firing a gun at someone, he was charged for that, correct? He shot the bullet into the wall. Yeah. He was charged and convicted of firing in a dwelling. What is the physical restraint, though? You look at the model instruction that the Court gave in Mendoza. It talks about tying, binding, gagging. I could imagine handcuffing or locking someone in the trunk of a car. In this case, what was the physical restraint? It's not. It's not. Those are examples of physical restraint. But I don't believe that pursuant to Nevada law, which it's up to the Nevada Supreme Court to decide what physical restraint means, that holding somebody at gunpoint for an extended period of time physically restrained this man from leaving. Was physical restraint even required by the unchallenged parts of this jury instruction? No, it wasn't. I mean, the first prong of the jury instruction itself allowed him to be convicted if there was an increased risk of harm that was not attendant to the robbery. The attempted robbery was done long over. This guy said, okay, give me the money later, you know, and it was done. After that, this continues on for an extended period of time and had nothing to do with the attempted robbery. So if in a bank robbery case, if the robbery takes longer than expected because the teller can't find the keys to the safe, under your reading of Nevada law, when does that bank robbery become a kidnapping? Well, I mean, if he can't find the case, the key is to the safe. And the guy stays in there for, you know, an hour and holds him at gunpoint. And, you know, it really you have to look at whether or not was that part of completing the robbery or not. No, here it wasn't. There was an independent purpose to all this. He was enjoying holding this guy captive and keeping him in fear of his life. If Nevada law said that any robbery that took more than five minutes was a kidnapping, would that be a problem under Federal law? No, because that's an issue of State law. And that's up to the Nevada Supreme Court to decide. And so here the Nevada Supreme Court found that there was sufficient, you know, the instruction itself does, there appears to be some tension with Mendoza. But, and again, the question here is not just whether the instruction was wrong. Okay. The clearly established Federal law on this point, Estelle v. McGuire, even if we don't get to what the clearly established Federal law is, the standard for review pre-EDPA was not does the instruction violate due process, but does the conviction itself violate due process? Was he deprived of a fair trial? There was sufficient evidence here to convict this man of both attempted robbery and kidnapping. This is not a case for habeas relief. Now, counsel, you provided a citation to the Court this morning, I believe. I did. And in Dixon v. Williams, as I recall from reading the case a while back, the Ninth Circuit reversed in that case under EDPA for an instructional error. I believe that was a self-defense, improper and self-defense instruction? Correct. So since you provided the citation to the Court, I wanted to give you some time to talk about that case. I provided that citation to the Court. I felt as under my duty of candor that I had a duty to present that to the Court. In our briefing, the Respondent argued that Hovey-Carrie, which says that where there's a facially erroneous jury instruction, you do not apply the reasonable likelihood standard.  I believe that there was a reasonable likelihood that the jury actually applied the instruction in an unconstitutional manner. Hovey-Carrie is reliant upon pre-EDPA Ninth Circuit precedent and does not constitute clearly established Federal law. In Dixon v. Williams, this Court cited Boyd v. California for the proposition that where there is a facially erroneous instruction, you do not apply the reasonable likelihood standard. I disagree with this Court's point in Dixon respectfully because Boyd v. California did not make that holding. Under the Williams, I can't remember what, Williams v. Taylor, clearly established Federal law is only a holding from the Supreme Court of the United States. Boyd v. California did not hold that you do not apply the reasonable likelihood standard to a facially erroneous jury instruction. There they were dealing with what they called an ambiguous jury instruction and did apply the reasonable likelihood standard. That I'm aware of. There is not a Supreme Court case that supports Hovey-Carrie, and there's not clearly established Federal law that supports Dixon v. Williams either. I see my time has concluded. Respondents respectfully request that this Court affirm the district court's conclusion that the Petitioner is not entitled to relief. Thank you. Roberts. Thank you, counsel. You have 102 seconds. Thank you. I'll answer your question about harmless error, but I want to start briefly by reminding this Court that under both Harrington and Johnson, if the question of whether something is adjudicated in the merits is about whether the Court really actually looked at the intrinsic rights and wrongs of the case. If it inadvertently overlooked a case or overlooked a claim, then it's not an adjudication on the merits. In terms of harmless error, there was not sufficient evidence to convict him on either of the two other grounds that were discussed in the instruction. Subsections 1 and 3, which were an accurate statement of State law, were accurate. I mean, they weren't perfect, but yes, they would pass constitutional muster. I just wanted to make sure you said accurate, not inaccurate. And I want to talk a lot about opposing counsel discussed the length of time. The length of time was actually not an extended period of time. And if you look closely at the testimony, what the testimony is, is that during the time period between 45 minutes and an hour, and that's based on his girlfriend's testimony, he didn't leave the apartment until when he came back to the apartment. It was 45 minutes to an hour. They played four to five games of chess. They – the lock was changed on his house. They drank. They had conversation. And then this incident happened. But after he emptied his pockets, that's when all of the gunshots into the wall happened. I mean, you don't deny that he was kept there longer and more dangerous things happened after it was clear that this attempt at robbery was over because he had no money with him. I would disagree with that. I would say that because it's an attempt robbery and he didn't have any money, it takes longer. And it takes longer because they're confirming that he doesn't have any money and they're trying to get him to bring additional money. And when you look at his testimony about what happens immediately after he says,  And he'll say five or ten seconds, no time at all. And when you actually look at what's happening there, it looks like the span of several minutes. And, again, there's no testimony directly on that point. You have to extrapolate from what the girlfriend said and about the time period. But four to five games of chess all happened before that, plus the lock was changed. There's also really no evidence of an increased risk and harm. This whole incident started with him pumping a shotgun. Why do you think a certain amount of time is necessary, though? Doesn't the instruction just require that he was restrained and the restraint increased the risk of harm to him? It doesn't require 15 minutes or 30 minutes or anything. It doesn't. It doesn't require any time. The legislature could have said, as opposing counsel said, any robbery that takes more than five minutes is a kidnapping, and it didn't. It takes – it requires a substantial increase of harm, which there wasn't. I'm not sure that I understand what this – your problem with respect to the instruction, as I understand it, is that it didn't – one aspect of it didn't take into account the need for a substantially increased risk of harm. Yes, Your Honor. Now, the Supreme Court of Nevada said in its opinion in this case that the State argued that moving the victim from the kitchen to the living room substantially increased the victim's risk of harm. And so what the State had said in argument was not erroneous. Now, why – if the State argued to the jury that there was a substantial increased risk of harm? They also argued to the jury that they could convict him based on the physical restraint alone. And in fact, what he said is, you may find him guilty – this is the prosecutor – you may find him guilty of both, kidnapping and robbery, if the victim was physically restrained. Was the victim physically restrained in this case? Yes. He was restrained of his movement. He couldn't move. He couldn't leave. They argued it as a separate basis for a conviction. Yeah, I understand that. But I thought that you were arguing that there was no basis in – that there was no basis in the evidence for arguing that there was a substantial risk of harm. And it would appear that the Supreme Court thought there was and that the State had argued it. I mean, our position is that there wasn't sufficient evidence to convict him because there wasn't a substantial risk – increase in the risk of harm. And I'm sorry. I see I'm out of time. Is it all right? But you can finish that sentence. Okay. That there wasn't a substantial increase in the risk of harm. I lost my train of thought. But the government did argue that there was to the jury. That's all I missed. They did argue that there was to the jury. Thank you. Thank you very much, counsel. Interesting case. The matter in that is submitted.
judges: SCHROEDER, OWENS, FRIEDLAND